UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OPERATING ENGINEERS &
PENSION TRUST FUND, et al.,

      Plaintiffs,

      v.

WESTERN POWER & EQUIPMENT CORP., et al.,

      Defendants.
_____/

No. C 10-4460 PJH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Defendants' motion to dismiss the second amended complaint ("SAC") came on for hearing before the court on June 22, 2011.  Plaintiffs Operating Engineers' Pension Trust Fund ("Trust Fund"), and individual Trustees of the Trust Fund, F.G. Crosthwaite and Russell E. Burns (collectively "plaintiffs") appeared through their counsel, Shaamini Babu. Defendants Case Dealer Holding Company LLC ("Case Dealer") and CNH America, LLC ("CNH America") (collectively "CNH defendants") appeared through their counsel, Steven Brenneman.  Having read all the papers submitted and carefully considered the relevant legal authority and the argument of counsel, the court hereby GRANTS defendants' motion in part and DENIES the motion in part, as stated at the hearing, and summarized as follows.

      1.      Plaintiffs have amended the complaint to allege two theories of parent liability: agency and the single employer, or integrated enterprise, doctrine.  SAC ¶ 74 (Fourth Cause of Action).  A parent corporation may be held liable for the acts of its subsidiary "where stock ownership has been resorted to, not for the purpose of participating in the

affairs of a corporation in the normal and usual manner, but for the purpose of controlling a subsidiary company so that it may be used as a mere agency or instrumentality of the owning company." United States v. Bestfoods, 524 U.S. 51, 62-63 (1998).  Agency is a highly fact-specific inquiry that requires the plaintiff to demonstrate the following elements: "'(1) there must be a manifestation by the principal that the agent shall act for him; (2) the agent must accept the undertaking; and (3) there must be an understanding between the parties that the principal is to be in control of the undertaking.'" Bowoto v. Chevron Texaco Corp., 312 F.Supp.2d 1229, 1239 (N.D. Cal. 2004) (quoting Rubin Bros. Footwear, Inc. v. Chemical Bank, 119 B.R. 416, 422 (S.D.N.Y.1990)).

      To support their claims against CNH for liability as the parent of Case Dealer, plaintiffs allege the following:

      (a)    that CNH is the sole member of Case Dealer and the two entities share a website (www.cnh.com);

      (b)    in October and November 2008, Thomas H. Graham, the chief negotiator for CNH, negotiated with the Union in an attempt to enter into a collective bargaining agreement on behalf of the employees of Case Dealer;

      (c)    on November 6, 2008, Case Dealer and CNH's counsel, Larry G. Hall, sent a letter to the Union's counsel stating that CNH created Case Dealer solely for the purpose of acquiring the assets of the WPE defendants;

      (d)    on November 17, 2008, Michael P. Going, Vice-President and General Counsel of CNH, executed an agreement on behalf of Case Dealer;

      (e)    on November 24, 2008, Graham sent correspondence on letterhead for CNH and Fiat Group to Union counsel regarding the negotiations involving the employees of Case Dealer;

      (f)    Case Dealer secured a possible release for CNH under the letter agreement.

SAC ¶ 74 (a) - (f).  Taken as true, these allegations are sufficient to allege an agency theory of liability.  Defendants' motion to dismiss the agency theory of parent liability is therefore DENIED.

With respect to plaintiffs' alternative theory of parent liability, the Ninth Circuit has recognized the "single employer" theory in the context of a "double breasted" operation, in which the same contractor owns both union and non-union companies, to prevent the contractor from avoiding its collective bargaining obligations. UA Local 343 United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Industry of the United States & Canada v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1469-70 (9th Cir. 1994). Courts have applied the single employer doctrine to prevent employers from avoiding their collective bargaining obligations by shifting union work to a non-union entity, and the doctrine has been extended to the Title VII and employment context to determine employer liability in wrongful termination and discrimination disputes. See Cellini v. Harcourt Brace & Co., 51 F.Supp.2d 1028 (S.D.Cal. 1999) (applying integrated enterprise test to parent corporation in employee's sexual discrimination and harassment suit against employer). The Third Circuit has recognized that the single employer doctrine was developed by the National Labor Relations Board to pierce corporate veils in the limited context of labor relations. Pearson v. Component Technology Corp., 247 F.3d 471, 486 (3d Cir. 2001) ("The integrated enterprise test, with its focus only on labor relations and its emphasis on economic realities as opposed to corporate formalities . . . is demonstrably easier on plaintiffs than traditional veil piercing.") (citation omitted). Pearson noted that the single employer test has been applied in cases brought under the Labor Management Relations Act, Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Fair Labor Standards Act. However, plaintiffs cite no authority that this doctrine has been applied to attach general liability to a parent corporation for the subsidiary's conduct, as proposed here. The court therefore GRANTS defendants' motion to dismiss the single employer theory of parent liability against CNH.

2. The amended allegations in support of plaintiffs' claim for breach of contract fail to state viable claim for relief because plaintiffs lack third-party beneficiary standing to enforce the letter agreement. As the court held in the March 28, 2011 order, a purported third-party beneficiary must show that the contract was "made expressly for the benefit of a

3

1  third person." Doc. no. 66 at 2 (citing Cal. Civ. Code § 1559; Trustees of Screen Actors
2  Guild-Producers Pension and Health Plans v. NYCA, Inc., 572 F.3d 771, 779 (2009)).
3  Plaintiffs' amended allegations fail to demonstrate that the letter agreement discloses any
4  affirmative promise by Case Dealer to convey unpaid withdrawal liability to the Trust or to
5  assume WPE defendants' withdrawal liability.  Rather, the letter agreement recognizes
6  WPE defendants' pre-existing obligations to the ERISA plan, rendering the plan only an
7  incidental, not intended, beneficiary of the agreement. NYCA, 572 F.3d at 779-80.
8  Accordingly, defendants' motion to dismiss the breach of contract claim is GRANTED.
9  Having previously granted leave to amend, the court dismisses the breach of contract claim
10 with prejudice.

11       3.    Similarly, plaintiffs' amended allegations in support of their conversion claim
do not cure the deficiencies identified by the court in the March 28 order.  The SAC fails to
allege the required elements of (a) ownership of the property and (b) defendants' wrongful
act or disposition of property rights.  Doc. no. 66 at 4 (citing Oakdale Vill. Grp. v. Fong, 43
Cal. App. 4th 539, 543-44 (1996)).  With respect to the ownership element, the court
previously held that the letter agreement does not purport to give plaintiffs a property
interest in the WL Holdback; rather, the WL Holdback was set aside in order to satisfy a
possible claim by the Trust as to WPE's withdrawal liability.  Doc. no. 66 at 4.  The
amended allegations do not demonstrate that plaintiffs gained an ownership interest in the
WL Holdback, making plaintiffs' claim distinguishable from cases recognizing a surety's
right to possess set-aside funds where the set-aside was established as a requirement
under a surety agreement. See Gulf Ins. Co. v. First Bank, 2009 U.S. Dist. Lexis 32488
(E.D. Cal. April 10, 2009), aff'd, 400 Fed. Appx. 188 (9th Cir. 2010), and Travelers Cas. &
Surety Co. of America v. RBC Centura Bank, 2008 U.S. Dist. Lexis 80062 (E.D. Cal. April
29, 2008).  This claim is therefore dismissed with prejudice.

       4.    The SAC alleges a claim against WPE and CNH defendants for engaging in
transactions to evade and avoid withdrawal liability in violation of section 4212(c) of ERISA,
as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA).  That

4

provision, codified at 29 U.S.C. § 1392(c), states: "If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction." The court previously held that the allegations demonstrated an arm's length transaction and did not demonstrate the type of sham transaction that is required to violate section 1392(c), and that plaintiffs failed to allege that the sale of assets by WPE to Case Dealer, and the resulting letter agreement, were entered into for the express purpose of avoiding or evading withdrawal liability. Doc. no. 66 at 5 (citing Cuyamaca Meats, Inc. v. San Diego and Imperial Cntys. Butchers' and Food Emp'rs' Pension, 827 F.2d 491 (9th Cir. 1987)).

In support of their section 1392(c) claim, plaintiffs now allege that Case Dealer received notice of the claim for withdrawal liability in July and September 2008 and was aware of the estimated withdrawal liability provided by the Trust to WPE defendants. SAC ¶¶ 79-80. Plaintiffs do not contend that the purchase agreement itself was a sham transaction but that Case Dealer's failure to notify the Trust about the WL Holdback provision, its failure to release the WL Holdback in accordance with the agreement, and its use of the WL Holdback to satisfy a judgment against WPE defendants, resulted in a transaction to evade and avoid withdrawal liability. See, e.g., SAC ¶¶ 40, 82-85. Although Case Dealer was not the contributing employer, the Second Circuit has held that liability for evasion or avoidance of withdrawal liability is not limited to employers, and "any party" whose acts have adversely affected the benefits fund is within the reach of the statute. IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993). The Ninth Circuit has not ruled directly on the issue whether a non-employer can be held liable under section 1392(c), but has recognized that section 1392(c) extends liability for evasion or avoidance to entities other than the contributing employer. See Resilient Floor Covering Pension Fund v. M&M Installation, Inc., 630 F.3d 848, 852 n.5 (9th Cir. 2010) (noting that the parties did not raise the issue "whether ERISA 'common control' or § 1392(c) are the only ways for a company to be responsible for another entity's withdrawal liability").

Plaintiffs' allegations are therefore sufficient to state a claim of evasion or avoidance against Case Dealer.

CNH defendants argue that plaintiffs' allegations do not satisfy section 1392(c)'s "principal purpose" requirement because the principal purpose of the letter agreement was to protect Case Dealer from WPE defendants' non-payment of their potential withdrawal liability to plaintiffs. Doc. no. 67 at 18. Though the court has recognized a bona fide purpose of the letter agreement at issue, this legitimate purpose does not preclude a finding that Case Dealer had other motives or intentions to avoid withdrawal liability. See Supervalu, Inc. v. Board of Trustees, 500 F.3d 334, 343-44 (3d Cir. 2007) (bona fide, arm's length transactions are not exempt from section 1392(c)). As the Sixth Circuit has recognized, "the language of the MPPAA makes it clear that an employer can have more than one principal purpose in conducting a transaction." Sherwin-Williams Co. v. New York State Teamsters Conference Pension and Retirement Fund, 158 F.3d 387, 395 (6th Cir. 1998).

Here, plaintiffs allege that Case Dealer received notice of the claim for withdrawal liability in July and September 2008, and that in October 2008, CNH's chief negotiator discussed withdrawal liability of about $700,000 with Union representatives. SAC ¶¶ 79-80. Plaintiffs allege that despite its knowledge of WPE defendants' estimated withdrawal liability, Case Dealer failed to notify the Trust about the WL Holdback provision, imposed an arbitrary one-year deadline from August 29, 2008 to August 29, 2009, and failed to extend the WL Holdback Period, all for the primary purpose of evading or avoiding withdrawal liability. SAC ¶¶ 83-84. Plaintiffs also allege that Case Dealer failed to release the WL Holdback in accordance with the agreement and instead used the WL Holdback to satisfy an unrelated judgment to Case Dealer, despite awareness of the withdrawal liability, thereby giving itself priority over the Trust's claim for withdrawal liability as well as the claims of other creditors. SAC ¶¶ 40, 82, 85. Plaintiffs' amended allegations are sufficient to raise an issue of fact whether "a principal purpose" of defendants' transactions was to evade or avoid withdrawal liability.

6

To the extent that CNH defendants argue that they cannot be held liable for withdrawal liability under ERISA because Case Dealer did not assume such liability under the letter agreement, section 1392(c) imposes statutory liability for evasion or avoidance "without regard" to the terms of the letter agreement. Under Herrmann, any parties who participated in a scheme to evade or avoid and to whom assets were improperly transferred are liable under section 1392(c). Following the view that ERISA "is remedial legislation which should be liberally construed in favor of protecting participants in employee benefits plans," Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1984), the court determines that plaintiffs' amended allegations state a plausible claim against CNH defendants for evasion or avoidance of withdrawal liability. Defendants' motion to dismiss the claim under section 1392(c) is therefore DENIED.

Plaintiffs may file an amended complaint consistent with this order and the order of March 28, 2011, within 21 days of the date of this order. No additional claims or parties may be added without leave of court. Defendants must answer or otherwise respond within 21 days after plaintiffs file the amended complaint.

**IT IS SO ORDERED.**

Dated: June 23, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge