UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPERATING ENGINEERS' PENSION TRUST FUND, et. al.,<br><br>        Plaintiffs,<br>  v.<br>WESTERN POWER & EQUIPMENT CORP., et. al.,<br><br>        Defendant.<br>_____/ | No. C-10-4460 PJH (JCS)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br>**[Docket No. 119]** |

## I. INTRODUCTION

In this ERISA enforcement action, Plaintiffs Operating Engineers' Pension Trust Fund, F.G. Crosthwaite and Russell E. Burns, ("Plaintiffs") bring a Motion for Default Judgment (the "Motion") seeking entry of default judgment. Plaintiffs allege that Defendants Western Power & Equipment Corp., an Oregon corporation ("WPE Oregon"), Western Power & Equipment Corp., a Delaware corporation ("WPE Delaware"), referred to hereafter as "WPE Defendants"), and Arizona Pacific Materials, LLC, an Arizona limited liability company (referred to hereafter as "APM I Defendant") are jointly and severally liable for payment of withdrawal liability resulting from Defendants' complete withdrawal from the Operating Engineer's Pension Trust Fund ("Trust").[1]
Plaintiffs also seek interest, liquidated damages, attorneys' fees and costs. Plaintiffs further request

---

[1] On February 28, 2012, pursuant to F.R.C.P. Rule 41(a)(1), Plaintiffs, in their respective capacities as Trustees of the Operating Engineers Pension Trust Fund, voluntarily dismissed with prejudice Defendants CNH America LLC, Case Dealer Holding Co. LLC (formerly known as CNH Dealer Holding Company LLC), Charles Dean McLain, as an individual; Robert Rubin, as an individual; and Rubin Family Irrevocable Stock Trust. *See* Dkt. No. 126.

that the Court retain jurisdiction over the action. The Motion came on for hearing on Friday, March 23, at 9:30 a.m.

For the reasons stated below, it is RECOMMENDED that the Court GRANT Plaintiffs' Motion in part and that Plaintiffs be awarded the following amounts: 1) $669,055.00 in assessed withdrawal liability; 2) $133,811.00 in liquidated damages; 3) $137,658.30 in interest; 4) $3,931.97 in costs. Pursuant to the Plaintiffs' stipulation at the hearing, no attorneys' fees should be awarded.

## II.   BACKGROUND

### A.   The Parties

Plaintiff is the Operating Engineers' Pension Trust Fund. Complaint, ¶ 1. The Trust Fund is an employee benefit plan within the meaning of § 3(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3). *Id*. *See* Declaration of Greg Trento ("Trento Decl."). In addition, the Complaint names as Plaintiffs F.G. Crosthwaite and Russell E. Burns, who are members of the Board of Trustees of the Trust ("Trustees"). *Id*. ¶3.

The Trust is (a) an employee benefit plan as defined in the ERISA §3(3) (29 U.S.C. §1002 (3)), (b) an "employee benefit pension plan" as defined in §3(2) of ERISA (29 U.S.C. §1002(2)) and (c) a "multiemployer plan" as defined in ERISA §§3(37) and 4001(a)(3) (29 U.S.C. §§1002(37) and 1301(a)(3)). Trento Decl., ¶2. The Trust cover employers in the building and construction industry. Trento Decl., ¶2. The Trustees are "fiduciaries" with respect to the Trust as defined in ERISA §3(21)(A) (29 U.S.C. §1002(21)(A)), and are collectively the "plan sponsor" of the Board of Trustees within the meaning of ERISA §§3(16)(B)(iii) and 4001(a)(10)(A) (29 U.S.C. §§1002 (16)(B)(iii) and1301(a)(10)(A)). Defendant Western Delaware was a publicly held corporation which was also registered to do business in Washington and its corporate status is inactive. Declaration of Shaamini Babu ("Babu Decl.") at ¶2, Exh. A. Defendant WPE Oregon was also registered to do business in California, Nevada, and Washington and its corporate status is inactive, forfeited, or revoked in said states. Babu Decl., at ¶4, Exh. B. Per filings with the Securities and Exchange Commission dated August 5, 2008, and letter agreement dated August 29, 2008, WPE Delaware was the sole shareholder of WPE Oregon. Babu Decl., at ¶6, Exh. D. Per filings with the

Securities and Exchange Commission dated August 5, 2008, Defendant APM I was a wholly owned subsidiary of Defendant WPE Delaware. Babu Decl., at ¶¶5,6, Exhs. C, D, p.6.

Plaintiffs argue that the business here are under common control and that under ERISA they shall be treated as a single employer. *See* ERISA § 2001(b)(1) (29 U.S.C. § 1301(b)). The Court agrees. First, Plaintiffs made such an allegation in the Second Amended Complaint. SAC ¶ 15. Plaintiffs have submitted evidence that WPE Delaware was the sole shareholder of WPE Oregon at the time of the withdrawal in this case. Babu Decl., ¶¶ 6, 7, Exhs. D-E. Further, Plaintiffs have submitted SEC filings that demonstrate that Defendant APM I was a wholly-owned subsidiary of Defendant WPE Delaware at the time of the withdrawal. Id., ¶ 6, Exh. D. Motion at 7 (citing *Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Zacek Industries, Inc*., 1994 WL 201042 at *2 (N.D. Ill. 1994) (finding that control is determined at the time of withdrawal). Moreover, WPE Delaware and WPE Oregon are inactive. Thus, Plaintiffs have submitted evidence that the WPE Defendants and Defendant APM I "are all members of the same control group and treated as a single employer within the meaning of ERISA §§3(5) and 4001(b)(1) of (29 U.S.C. §§1002(5) and 1301(b)) and National Labor Relations Act ("NLRA") §2(2) (29 U.S.C. §152(2)), that are engaged in an industry affecting commerce within the meaning of ERISA §3(11) and (12) (29 U.S.C. §1002(11) and (12))." Plaintiffs' Motion at 3.

Plaintiffs have submitted evidence that the WPE Defendants were participating employers in the Trust pursuant to collective bargaining agreements ("Bargaining Agreement") with the Operating Engineers Local Union. 3 ("Union") which required them to make fringe benefit contributions for all covered work performed by their employees. Trento Decl., ¶5, Exh. A. The Union is a labor organization as defined in NLRA §2(5). Accordingly, the WPE Defendants were obligated to and did make contributions to the Trust on behalf of their employees covered under the Bargaining Agreement.

In the Second Amended Complaint, Plaintiffs allege that in June 2008, the WPE Defendants agreed to sell and Defendant Case Dealer Holding Company, LLC (Case Dealer) agreed to purchase the assets of the WPE Defendants ("Asset Purchase Agreement") for $30 million. Babu Decl., ¶ 7, Exh. E; SAC, ¶27. The sale caused the WPE Defendants to make a complete withdrawal from the

3

Trust under ERISA § 4203(b) (29 U.S.C. § 1383(b)) in the 2008 Plan year. *Id*. The WPE Defendants reported contributions to the Trust for covered work that had been performed through November 2008, but thereafter, the Defendants reported zero work hours to the Trust through June 2009. *Id*., ¶ 37. In a letter dated December 3, 2009, Plaintiffs informed the WPE Defendants of the withdrawal liability assessed against them pursuant to ERISA as a result of their withdrawal from the Trust on December 1, 2008. Trento Decl., ¶¶ 8-10, Exh. D. Specifically, the Trust informed the WPE Defendants of the following:

    a.    The Plan had a fiscal year running from January 1 through December 31 and therefore, the withdrawal liability was calculated as of December 31, 2007, as required by ERISA §4211(b)(2)(A) (29 U.S.C. §1391(b)(2)(A)).

    b.    The withdrawal liability of WPE Defendants in the amount of $669,055 could be paid in one lump sum or in quarterly installments as follows:

$34,282.17 February 1, 2010
$34,282.17 May 1, 2010
$34,282.17 August 1, 2010
$34,282.17 November 1, 2010
$34,282.17 each succeeding quarter through August 1, 2015
$1,434.61 November 1, 2015

    c.    WPE Defendants had the option of challenging the calculation of the withdrawal liability by requesting review within ninety (90) days from receiving the notice of the withdrawal liability assessment as provided by ERISA §4219(b)(2) (29 U.S.C. §1399(b)(2)).

    d.    Any dispute concerning a determination of withdrawal liability must be resolved through arbitration provided that arbitration was timely initiated under ERISA §4221(a) (29 U.S.C. §1401(a)).

    e.    A list of all trades and businesses in the same controlled group was required to be provided within thirty (30) days pursuant to ERISA §4219(a) (29 U.S.C. §1399(a)).

Motion at 4-5; Second Amended Complaint, ¶ 38.

According to the Plaintiffs, the WPE Defendants failed to make any of the required quarterly installment payments, request review, initiate arbitration, or provide any information regarding control group members. Motion at 4; Babu Decl., ¶8. On March 4, 2010, the time to request review expired. On March 17, 2010, Plaintiffs notified WPE Defendants that they would be in default if they failed to cure the delinquent installment payments within sixty days pursuant to ERISA. Babu Decl., at ¶ 9, Exh. F. According to the Plaintiffs, the WPE Defendants have never cured their delinquent quarterly payments and are now in default. Babu Decl., at ¶10. Under ERISA

4

§4219(c)(5) (29 U.S.C. § 1399(c)(5)), the entire unpaid withdrawal liability of $669,055 plus interest was accelerated and became due on May 19, 2010.

On October 1, 2010, the Plaintiffs filed the present action. Defendant WPE Oregon was served on October 8, 2010, and Defendant WPE Delaware on October 27, 2010. A proof of service was filed for Defendants WPE Oregon and WPE Delaware on October 19, 2010 and November 8, 2010. *See* Dkt Nos. 9, 14. Plaintiffs filed a First Amended Complaint, which was served on all Defendants. *See* Dkt. Nos. 22, 47, 46. Plaintiffs filed a Second Amended Complaint ("SAC") on March 16, 2011. Defendants failed to respond to the Second Amended Complaint.

Default was entered as to all WPE Defendants and Defendant APM I on September 14, 2011, and Plaintiffs now bring a Motion for Default Judgment. Docket No. 114. In the Motion, Plaintiffs seek a judgment against WPE Defendants and Defendant APM I for an award of the entire assessed withdrawal liability, plus interest. In addition, Plaintiffs seek liquidated damages in the amount of 20 % of the delinquent amount upon commencement of litigation as provided by the Delinquency Collection Procedures adopted by the Trustees. Trent Decl., ¶ 7, Exh. C. In their Motion, Plaintiffs sought attorneys' fees and costs. As will be explained further below, at oral argument on the present Motion, counsel for Plaintiffs withdrew the fee request.

### III.   ANALYSIS

#### A.   Entry of Default Judgment

Plaintiffs have applied for a default judgment in this action on the basis that Defendants have failed to appear after valid service. Under Federal Rule of Civil Procedure 55(b)(2), the court may enter a default judgment where the clerk, under Rule 55(a), has already entered the party's default based upon a failure to plead or otherwise defend the action. The district court's decision to enter a default judgment involves some discretion. *Lau Ah Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956) (affirming district court's denial of default judgment). The court is free to consider a wide range of factors in deciding whether to enter a default judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal

5

Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *see also* Wright & Miller, *Federal Practice and Procedure*, Civil § 2685.

Where a default judgment is deemed appropriate, the factual allegations of the complaint, except those relating to damages, are taken as true. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). So long as the allegations in the complaint are "well-pleaded," liability is established as to those allegations by the default. *Trans World Airlines Inc. v. Hughes*, 308 F. Supp. (D.C.N.Y. 1969), *modified on other grounds*, 449 F.2d 51, *rev'd on other grounds*, 409 U.S. 363 (1973).

Plaintiffs' claims are well-pleaded. Further, there is no evidence in the record that suggests that default judgment should not be entered. Therefore, liability is established and default judgment should be entered against Defendants.

**B.     Requested Relief**

**1.     Section 1132(g)**

Once liability is established in a default situation, a plaintiff must then establish that the requested relief is appropriate. *Geddes*, 559 F.2d at 560. A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. *See* Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 521(b)(1). Here, Defendants are not minors, incompetent persons, or persons in military service. Rather, the remaining Defendants are entities.

ERISA provides:

> A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief.

29 U.S.C. § 1451. An employer that withdraws from the Trust must pay withdrawal liability to the Trust. 29 U.S.C. § 1383. Following the assessment of the withdrawal liability payment, an employer may challenge the assessment (29 U.S.C. § 1399(b)(2)), and thereafter, timely demand arbitration (29 U.S.C. § 1401(a)). Failure to initiate arbitration within the statutory time period constitutes a waiver of objections to the withdrawal liability calculation. *See Teamsters Pension Trust Fund - Bd. Of Tr. Of the Western Conference v. Allyn Tramsp. Co.*, 832 F.2d 502, 504 (9th Cir. 1987). It is the Plaintiffs' burden to establish entitlement to relief through testimony or written

affidavit.  Here, Plaintiffs have submitted the Declarations of Greg Trento and Shaamini A. Babu in support of their Motion.

### 2.     Withdrawal Liability

Plaintiffs have submitted evidence that the WPE Defendants made a complete withdrawal from the Trust under ERISA § 4203 on or about December 1, 2008. Trento Decl., ¶ 8.  Thus, Defendants are subject to withdrawal liability.  On December 9, 2009, the Trust assessed withdrawal liability of $669,055 against WPE Defendants.  Trento Decl., at ¶ 10, Exh. D.  Because the WPE Defendants failed to initiate arbitration, they cannot dispute the amount of the assessed withdrawal liability.  Babu Decl., ¶ 8. ERISA § 4221(a) (29 U.S.C. § 1401(a)).  *See also Teamsters Pension Trust Fund, supra,* at 504 (failure to initiate arbitration within statutory period constitutes waiver of objections to fund's withdrawal liability calculations).  WPE Defendants made no withdrawal liability payments and thus, on March 17, 2010, Plaintiffs provided the Defendants with a 60-day notice to cure.  Babu Decl., ¶ 9, Exh. F.  The WPE Defendants failed to cure as required by ERISA § 4219(c)(5) (29 U.S.C. § 1399(c)(5)).  Plaintiffs filed the present action in order to recover the unpaid withdrawal liability of WPE Defendants and their controlled group.  WPE Defendants and APM I have failed to appear.  Docket No. 114.  The withdrawal liability amount of $669,055.00 should be awarded in full.

### 3.     Liquidated Damages

Plaintiffs seek liquidated damages calculated at a rate of 20% of the withdrawal liability amount.  Plaintiffs are entitled to liquidated damages under ERISA, 29 U.S.C. § 4301(b), and the Master Agreement, which provides for liquidated damages calculated 20% of the amount due upon commencement of litigation. Trento  Decl., ¶ 7, Ex. C (Delinquency Collections Procedures, as amended on May 24, 2010).  *See Amalgamated Ins. Fund v. Geltman Indus., Inc*., 784 F.2d 926 (9th Cir. 1986) ("in any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of Section 515.")).
Further, ERISA provides:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 (29 U.S.C. § 1145) in which a judgment in favor of the plan is awarded, the court shall award the plan –

7

>    (A) the unpaid contributions
>    (B) interest on the unpaid contributions
>    (c) an amount equal to the greater of
>         (I) interest on the unpaid contributions
>         (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of the unpaid contributions],
>    (D) reasonable attorneys fees and costs of the action, to be paid by the defendant, and
>    (E) such other legal or equitable relief as the court deems appropriate.
>    For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986.

29 U.S.C. § 1132(g)(2). Liquidated damages are mandatory if the employer is delinquent at the time the action is filed, the district court enters a judgment against the employer and the plan provides for such an award. *See Northwest Administrators, Inc. v. Albertson's Inc*., 104 F.3d 253, 258 (9th Cir. 1996).

Here, the Defendants were delinquent at the time this case was filed on October 1, 2010. Trento Decl., ¶ 10, 12. Plaintiffs notified Defendants that they would be in default if they did not cure the delinquent installment payments within sixty days of March 17, 2010. Babu Decl., ¶ 9. The Defendants did not make any payments and the entire amount was accelerated and became due on May 19 ,2010. ERISA § 4219(c)(5) (29 U.S.C. § 1399(c)(5)). The Withdrawal Liability Procedures adopted by the Trustees provide for liquidated damages at the rate of twenty percent of the delinquency amount upon commencement of litigation. Trento Decl., ¶ 7, Exh. C. *See also, id*, Exh. B at Article II, § 10 (liquidated damages accrue at a rate to be set by trustees). The three requirements for an award of liquidated damages are satisfied. Thus, Plaintiffs should be awarded liquidated damages in the amount of $133,811.00 on the withdrawal liability amount.

### 4. Interest

Plaintiffs request an award of interest at a rate of 10%, which is consistent with the Delinquency Collection Procedures adopted by the Trustees. Trento Decl., ¶ 7, Exh. C.

Applying the 10% rate, Plaintiffs are entitled to $143,157.30 in interest on the unpaid withdrawal liability amount of $669,055. The Court calculates this interest amount from February 1, 2010 (due date of the first quarterly payment) through the hearing date, March 23, 2012 (*i.e*., 781 days), and continues to accrue at a rate of $183.30. Trento Decl., ¶ 12.

8

**5.     Attorneys' Fees**

At the hearing in this matter, counsel conceded that a large portion of the fees were incurred in connection with litigating against Defendants who have since settled with the Plaintiffs. Counsel declined the Court's invitation to provide time records or other documentation to justify the fee request and opted to withdraw the request. Accordingly, pursuant to the Plaintiffs' stipulation, the Court recommends that no attorneys' fees be awarded in this matter.

**6.     Costs**

Plaintiffs further seek to recover costs in the amount of $3,931.97, that is, $350.00 for the filing fee in this action, $2,005.00 for the costs of personal service, and $542.41 for the costs of delivery of pleadings to the Court. Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees for service of process "to extent reasonably required and actually incurred." Plaintiffs are entitled to recover delivery costs if those costs are customarily billed separately. *See Trustees of the Construction Indus. and Laborers Health and Welfare Trust v. Redland Insur. Co.,* 460 F.3d 1253, 1256, 1259 (9th Cir. 2006) ("if the expenses specified by the Joint Trustees in this case [including messenger fees] are customarily billed separately, they are recoverable as 'reasonable attorney's fees" under ERISA).

Plaintiffs have adequately documented these costs. *See* Babu Decl, Ex. G. Therefore, Plaintiffs' costs should be awarded in the amount of $3,931.97.

**7.     Retention of Jurisdiction**

Plaintiffs request that the Court retain jurisdiction so that the judgment may be enforced. In ERISA cases, courts may retain jurisdiction to amend a default judgment to more accurately reflect the plaintiff's damages where some aspect of damages has not yet been determined. *See Bd. of Trs. of Laborers Health & Welfare Trust v. Atoll Topui Island, Inc.*, 2007 WL 174409 *10 n.4 (N.D. Cal. Jan. 22, 2007) (adopting magistrate judge recommendation that the court retain jurisdiction in ERISA action for delinquent contributions to amend default judgment after audit had been completed). Here, there has been no indication that retention of jurisdiction is required or necessary in this case. It is therefore RECOMMENDED that the Plaintiffs' request that the Court retain jurisdiction over the action be DENIED.

9

## IV. CONCLUSION

For the reasons stated above, it is RECOMMENDED that default judgment be GRANTED. Plaintiffs should be awarded the following amounts: 1) $669,055.00 in withdrawal liability; 2) $133,811.00 in liquidated damages; 3) $143,157.30 in interest; 4) $0 in attorneys' fees; and 5) $3,931.97 in costs. The Defendants are jointly and severally liable.

Dated: April 2, 2012

JOSEPH C. SPERO
United States Magistrate Judge